Our next case is OptoLum, Inc. v. Cree, Inc., 2022-15-11. If you're ready when you are, Mr. Martinson. Thank you. Here you are. Good morning, Your Honors. May it please the Court. I'm here to ask this Court to correct three errors made by the District Court, two related to claim construction, in particular disclaimer and corresponding prosecution history estoppel, and one related to a damages issue where the District Court abused its discretion by not letting Mr. Scali opine on the ultimate number that he thought the royalty rate should be increased by, but allowed him to present a mountain of evidence suggesting the royalty rate should be increased. Starting with the claim construction issue, the parties agree on how claim construction is supposed to go. What they disagree about is whether this sentence, all the LEDs shown in Figure 2B are in the same plane, i.e., that is, the plane defined by the drawing sheet. In no way is that statement alone a disclaimer of a single ring of LEDs around an elongate thermally conductive member. In fact, if you look at that statement on its face, all it says is the LEDs... Mr. Martinson, this is Judge Toronto. I'm not sure I had even understood there to be an argument about the claim disclaiming something, but rather that this was essentially entirely based on a prosecution history statement, which is ordinarily where, if not in the spec, you find a disclaimer. You ordinarily wouldn't find a disclaimer in the claim itself. So can you address why the district court was wrong to find a clear disclaimer of precisely the sort that embodied into the claim construction to find that in the prosecution history? Sure, Your Honor, and if I said the claim disclaimant, that was incorrect. It is actually a statement from the prosecution history, and that is the statement that we are talking about there. So if you look at the totality of the prosecution history, which is what you're supposed to do under this court's precedent, you will see that the claim was initially rejected under this art reference, and with respect to this specific multi-plane limitation, it was rejected using only Figure 2B. However, if you look at the rejection with respect to the elongate thermally conductive member, the examiner pointed to the corresponding description of Figure 2B, which says this member, which is shown in Figure 2B, is actually a ring of multiple LEDs about it. So when you look at the totality of the prosecution history and the response, which although technically correct, arguably incorrect as well, says all the LEDs are in a single plane defined by the drawing sheet, all the prosecuting attorney was doing was making reference to the planar nature of the arrangement in Figure 2B, which is precisely described in the background of the invention of the application. If you look at the statement in the background of the invention, which you can find at column 1, lines 19 through 25, it says in these prior applications, LEDs are typically mounted in a planar fashion in a single plane that is supposed to be perpendicular to the viewing area. So if you're looking at a brake light, for example, all the LEDs are in the same plane. When you look at Figure 2B of art, that is exactly what the argument is that was being made in response to the examiner's rejection. Further evidence that there was no disclaimer and that Optelum's construction was correct is if you look at the specification and our own description of the figures, for example, Figure 1 describes a planar side view. Figure 2 is a top planar view. And if you look at Figure 2 of the 028 patent and the 303 patent, you'll see something very similar to art. The same thing with Figure 5 of the asserted patents. It looks just like art, and somehow this statement that says all the LEDs in Figure 2B of art are in the same plane disclaimed the embodiments of Figure 2 and Figure 5. And if you take it one step further, that same statement, when you look at what Figure 2 actually is of art, would have disclaimed a multi-ring configuration as well. Because in Figure 2B, because you were looking at an axial view, all you see is essentially a top view, one ring of LEDs. But what you don't see are the LEDs above or below it, which are clearly described in art. So reading this limitation of having... I'm looking at Art 3796-97. Are the non-single-plane LEDs clearly described as I think you said? If you go to Column 4 and you look at Lines 41 through 55, in particular you can look at, I believe it's Line 48, in this exemplary embodiment, the LEDs of the array proceeding parallel to the axis can be additionally combined to form lanes that are successively driven in a clockwise direction so that a rotating light is produced. So this was designed to be, for example, used on an ambulance. So you've got multiple LEDs arranged in multiple lanes that run perpendicular to the axis of this tubular cooling member exactly like is shown in the patent at issue. When you look at the rest of the description of the specification of the 028 and the 303 patent, there is nothing in there that limits the horizontal or vertical location of these LEDs. All it says is there has to be multiple LEDs arranged in at least two different planes about this thermally conductive member because, recall from the background of the invention, what this invention was trying to do is be used in general lighting applications. For example, a wall sconce where you want everything projecting straight out at you as you would see in Figure 2B of art. So in view of that evidence, it's clear that the district court got the construction wrong here. Further compounding the issue, assuming that the district court got it right, which obviously we disagree with, the district court went on to say, Pat, there can be no doctrine of equivalence analysis here because you disclaimed a single ring of bulbs. The issue before this court is whether or not what Optalum presented is an equivalent in multiple planes, not a single plane. Any arguable disclaimer that was made, as the district court said, would have been narrow and limited to a single ring of LEDs. And what Cree presented as its doctrine of equivalence argument was equivalent structures to an LED that are arranged in multiple planes about the thermally conductive member. Is this patent expired? This patent has expired, Your Honor. Is there other litigation going on concerning it? Not presently, Your Honor. So when you look at Cree's doctrine of equivalence position, there are clearly eight LED chips inside each one of these packaged LEDs, and there are at least three planes that are shown in that configuration. And that is the argument Cree wanted to present, and the judge prevented us from doing so. So there was no disclaimer, and there should not have been any prosecution history estoppel with respect to the doctrine of equivalence. Just a quick word on damages because I know I have an uphill fight in that matter. What really happened was a little confusing from the record in my view. The judge said there wasn't enough evidence presented and that Mr. Scali didn't tie his evidence to the facts of the case. What the judge did is allow Mr. Scali to say, hey, I looked at all these trademark licenses. I looked at the way Cree said it is going to use the patented technology to make itself a brand name. Cree was relatively unheard of. It wanted to get into the consumer space, and this light bulb was its avenue to do so. The judge let us and let Mr. Scali present all this information, but he wouldn't let him tell the jury how much the royalty rate should be increased by. They sit down with each other across the table, and they determine during the hypothetical negotiation that a 5% royalty for the patent stuff makes sense. But because Cree wanted to move into this space and become a household name, and this invention was as important as penicillin or the moon landing, there should be some added value there. The question is not whether it's Optimum's name that Cree is going to use. It's whether Cree values the use of this technology in a way that someone with a valuable brand would, which is why Mr. Scali looked at exclusive trademark licenses. If you're GE or Uber in this case, what value do you place on your name? What value do you place on the technology that you developed? So that is the position that was presented by Mr. Scali. So the jury was left hearing all this evidence about how much this royalty rate should increase, but was never told that number. And with that, Your Honor, I will rest the rest of my time. Thank you very much. We'll hear from Mr. Hoffman. Good morning, Your Honor. Good morning. And may it please the Court, this appeal is about recapture of disclaimed subject matter, which this Court does not allow. This is not a case of taking statements out of context. If you examine the prosecution history, you will see that there was an initial rejection for anticipation which required all the elements of the claim to be found. You will then find a second sentence in which the applicant identified the two-plane limitation, and he then identified the correspondence to Art in the disclosure, figure 2B. The second sentence in that three-sentence trilogy is that the applicant said the examiner is mistaken. Finally, the last sentence is the sentence in which the reason you're mistaken, examiner, is because all the LEDs of figure 2B in the Art reference, the 819 reference, are in the single plane, the plane of the paper. Now, you can find this statement at Appendix 1425. And the point of all this is that the applicant has to be held to the declaration that he made about what the invention is and is not. And in this case, he told the examiner that a single plane of LEDs in a ring does not meet the two-plane limitation. Now, I've heard a lot about how it is out of context. No, it's not out of context. It's actually in context. And the reason is, I told you we had the initial rejection for anticipation. What's at 1425 in the appendix is the amendment and the statement by the applicant that the claim is different than the reference. And then, if you go to Appendix 1460 and 1461, you get a final rejection. So you've got the original rejection, you've got the amendment, you've got a final rejection. And in that final rejection, the examiner says, at paragraph 10, what he does is, he says, okay, you've pointed out to me that Figure 2B puts all the LEDs in one plane. I'm going to cite other disclosure in the ARNT reference to maintain my rejection. The point of that is, the examiner never disagrees with the applicant that that statement that the applicant made was correct, that all the LEDs were in one plane. Which appendix page are you talking about again, please? Say that again. Appendix page number that you're talking about, please. Appendix 1460 and 1461. Now, the point of this is, where an applicant makes a declaration, if that applicant is held to that declaration, notwithstanding what other elements might be there. Can I just pursue this a minute? Sure. So I'm looking at the paragraph 10, 1460 to 61. Right. This is the examiner, is that right? That's correct. Okay, and the examiner says, in response to applicant's argument that all the LEDs shown in 2B are in the same plane, i.e., the plane defined by the drawing sheet, it is respectfully pointed out that Figure 2B is only a two-dimensional cross-section of the not shown three-dimension view of the tubularly shaped cylindrical hollow cooling number 31, whose cross-section is depicted in Figure 2B, Column 3. Why doesn't that pretty clearly say 2B is a top-down drawing, even if you had lots of LEDs up and down the tower? When you look at it from the top, they're all going to look like they're in the same plane. So you're actually wrong about that, dear applicant, in saying that they're all in the same plane. No, I disagree, Your Honor. What I would say is that he's agreeing with the applicant that they are all in the same plane in that Figure 2B, but there are other LEDs below it that run down the length of the tubular member, and so there could be more planes down there, which is why he cites it, so that he can maintain the rejection. But that doesn't disagree with the applicant's statement that if you only had one row of LEDs, that would not be within the two-plane limitation of the claim. And that is the key. The key is what the applicant said, not necessarily what the examiner did following on to that. Because when the applicant makes that declaration, he's saying what the invention is not, and what the invention is not is a single ring of LEDs around the tube, notwithstanding the fact that Art may anticipate later. So given that, and that is what the court found to be the disclaimer. So if the court found at... If you go to Appendix 6522, what the court found to be the disclaimer was that there is what's disclosed and discussed, and I'm reading from 6522, line 13 on, 13 to 15. What's disclosed and discussed in the 819 patent as LEDs in a single plane are LED packages in a single plane. And that is the disclosure, which is the disclaimed subject matter. So in terms of that there was a disclaimer in the file history, that is the nature of it. It's what the applicant declared. Now, I've also heard that appellants argue that prosecution history estoppel does not apply in this case because what needs to happen is that there is this argument that the disclaimer didn't go to multiple chips or multiple planes. Well, that's a misleading argument, and it's misleading because it's got the analysis backwards. What the appellant would like is for the court to apply the doctrine of equivalence prior to comparing it to what was disclaimed. That's not how the doctrine works. The doctrine works by identifying the disclaimed subject matter, which we just did, and comparing that to the accused product, not to some hypothetical structure, which goes to their theory of doctrine of equivalence. The whole point of the prosecution history estoppel is to preclude the application of the doctrine of equivalence if the accused product has within it the disclaimed subject matter. And that's what we have here. So if you go to Appendix 4277, that's what we're talking about is shown there in those pictures. What you have on the upper left is the disclosure out of Figure 2B, an annotated version with the little red circle around it, and what you have below it is an annotated version of the single-ring accused products. And you can see from the pictures that that is exactly the same subject matter. So when the disclaimed subject matter equals what's in the accused product, the doctrine of equivalence is irrelevant. It doesn't get applied. So we don't even get to their chip argument. And this is the comparison that the district court did, which you can find at Appendix 6521 through 6523. Now, the reason that we know that what was in ARNT is LEDs is because that's the only evidence in the record, and the LEDs were construed to be packages. The thing that was at issue were the LED packages. That's both in the claim construction, and that's in both the LEDs and the solid-state light sources, and it's in the... In fact, it's for counsel for appellants argued at claim construction that at Appendix 2028, the appellants argued at claim construction that the way one of ordinary skill in the art would understand LEDs is from their packaged version. And that's what we have here. In the pictures that I just showed you at the appendix, that's what you have. You have packaged LEDs around the circle. That's what was at issue in ARNT. That's what's at issue in the accused product. And so the disclaimer matches what's in the accused product, and therefore the doctrine of equivalence is inappropriate, and the district court was correct, deciding it as a matter of law. There's no issue of fact here. This is a matter of law both in claim construction and prosecution history. Disclaimer and estoppel. Let me spend the last few minutes talking about, since they raised the damages issue, the exclusion of the Scali testimony. There's no abuse of discretion here. This is a straight 702 analysis by the district court. The district court is required to be the gatekeeper for evidence. In this case, there was the testimony by Mr. Scali, simply even if you agreed that brand could be used as a marker, and the brand we're talking about here has nothing to do with the infringing products. It was completely admitted to be separate and distinct, but even if you agreed with that, there was no analysis why brand was taken into consideration for the hypothetical negotiation in the expert report. There was no support for the brand increasing the rate, and finally, even if you assumed one and two, there was no explanation of how the GE Hoover-like trademark licenses, which is what we're talking about here, how that 5% rate would apply in the hypothetical negotiation. He just said it. And the court rightly looked at 702 and said, you don't get to just say it. You have to link it up with evidence in the case, and you can find that analysis at appendix 156 through 158. There was no abuse of discretion here. So in sum, on the three issues that we're talking about, the district court was right in its claim construction, the district court was right in its estoppel on the doctrine of equivalence, and the district court was right to exclude the testimony of Mr. Scali. Thank you, counsel. You're welcome. I was hoping not to use it, your honors, but we will anyway. Okay. So counsel pointed you to appendix 4277, and if you look at that, the top-down view there, it's exactly figure 2 and figure 5 of the patent set issue. If you turn to the notion that the single sentence, that all the LEDs are in a single plane, disclaimed figure 2, figure 5 of applicant's patent is just wrong. I don't know how else to say it. There was no comparison where it says, my invention is not a single ring of LEDs. There is a statement in the claim itself that says the LEDs have to be in multiple planes, and clearly in the accused products they are, just all the LEDs are at the same height. With respect to the doctrine of equivalence, if you turn further in the appendix to 4395 and 4400, you'll see exactly the equivalence that were presented. Multiple equivalent LED structures arranged in multiple planes. If you take the cover off the single LED chip, the single LED package, there are eight LEDs in there arranged in three separate planes. That was the doctrine of equivalence argument. That is exactly what the doctrine of equivalence is supposed to do. Just because you can argue the LEDs are in a single ring, doesn't mean there aren't equivalent structures that are there. With respect to the 702 gatekeeper argument, I could not agree more. That is the court's role. But the court let in all kinds of evidence about how valuable the brand could be as a result of the use of this patented technology. The court, in its own appendix at APX 168 and 169, said Dr. Scali did the right analysis. He applied the right framework. Georgia-Pacific factors 11, 6, and 8 all relate to this. Dr. Scali presented mountains of evidence about why these trademark licenses were tied to the use of the technology. The court just precluded him from saying the words, the rate goes up 5%. That's clearly an abuse of discretion. Thank you, Your Honors. Thank you, counsel. Case is submitted.